UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>APPROXIMATELY $72,000 IN UNITED STATES CURRENCY,<br><br>　　　　　Defendant.<br>_____/ | No. C 08-1305 JCS<br><br>**ORDER GRANTING THE UNITED STATES' MOTION FOR DEFAULT JUDGMENT**<br>**[Docket No. 25]** |

## I.   INTRODUCTION

Plaintiff United States brings a Motion for Default Judgment ("the Motion") in this *in rem* action, seeking a declaration that approximately $72,000.00 in United States currency that was seized by postal inspectors is forfeited to the United States pursuant to 21 U.S.C. §§ 881(a)(6).[1] No opposition was filed, and the motion was suitable for disposition without oral argument. For the reasons stated below, the Court GRANTS Plaintiff's Motion.

## II.   BACKGROUND

### A.   Facts

On October 16, 2007, San Francisco postal inspectors seized $72,000 in United States currency from Express Mail package EB 406580511 ("the Express Mail package"). Complaint for

---

[1] The United States has consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. 636(c). No other party appeared. In an *in rem* forfeiture proceeding, a party that fails to comply with the applicable filing requirements is precluded from standing as a "party" to the action, thus making it unnecessary to obtain the individual's consent to proceed before a magistrate judge. *U.S. v. 5145 North Golden State Blvd*. 135 F.3d 1312, 1317 (9th Cir. 1998). Therefore, the undersigned magistrate judge may enter a judgment on the Motion.

Forfeiture ("Complaint") ¶ 8. The intended recipient was Earl J. Kennedy, Jr. ("Kennedy"). *Id.* Because Kennedy had previously been identified as the recipient of an unusually high number of Express Mail packages, United States Postal Inspector Megan Bradley placed a "mail watch" on Post Office Box number 27215, the P.O. Box Kennedy had opened in his name two years earlier. Complaint ¶¶ 9, 11.

On October 13, 2007, Inspector Bradley was notified that the Oakland Post Office was holding an Express Mail package that had been sent to Kennedy's P.O. Box. Complaint ¶ 10. The package was addressed to Kennedy, and the return address listed the sender as Robert Porter ("Porter") in Baton Rouge, Louisiana. *Id.* Two days later, on October 15, a certified narcotics detection dog, Xena, alerted to the Express Mail package. Complaint ¶ 12.

The next day, on October 16, Inspector Bradley tried to reach Kennedy by calling the phone number listed on the Express Mail package. Complaint ¶ 13. Inspector Bradley left two messages stating that she was from the Post Office and was holding the Express Mail package. *Id.* Kennedy did not return the calls. *Id.* Inspector Bradley then called the number provided for the sender, Robert Porter. Complaint ¶ 14. A man answered and identified himself as "Robert." *Id.* Inspector Bradley told him that she was trying to reach Kennedy regarding the Express Mail package. *Id.* Robert said he would contact Kennedy and have him pick up the package. About five minutes later, Kennedy called Inspector Bradley and told her he was coming to the Post Office to "pick up his package that had been 'missent'." Complaint ¶ 15.

When Kennedy arrived at the Post Office, he told Inspector Bradley he was not expecting a package, and did not know anyone named Robert Porter. Complaint ¶ 17. Kennedy then provided written consent for the Express Mail package to be opened. *Id.* The package contained a VCR and two DVD players. *Id.* Further examination revealed that the shells of the equipment had been packed with vacuum-sealed packages of money. Complaint ¶ 18. Kennedy said he knew nothing about the money and that the postal inspectors could take it. *Id.* Kennedy also provided a written disclaimer for the package. *Id.*

Immediately after Kennedy left the Post Office, Inspector Bradley called Robert Porter and told him that Kennedy had denied knowing Porter and disclaimed the package. Complaint ¶ 20.

2

Porter refuted Kennedy's statements, saying that he had just spoken to Kennedy to tell him that the package was at the Post Office. *Id.* When asked about the contents of the package, Porter described a VCR and two DVD players; he did not mention money, and Inspector Bradley did not tell him that she had found the parcels of currency. *Id.* Porter then asked that the package be returned to him. *Id.* When Inspector Bradley asked Porter if there was any reason a narcotics dog would alert to the package, Porter hung up. *Id.*

Three days later, on October 19, Porter called Inspector Bradley and "asked about his money." Complaint ¶ 21. Later that day, Kennedy returned to the Post Office, saying that he had "changed his mind," and wanted the Express Mail package back. *Id.*

Inspector Bradley conducted an investigation that revealed more information that led her to believe that the money could properly be seized under section 881(a)(6). First, the packaging and denominations of the currency were consistent with those used for or from the sale of illegal controlled substances. Complaint ¶ 22. Second, when Inspector Bradley opened the vacuum-sealed bags of money, she noticed a strong odor of cologne. *Id.* Based on her training and experience, Inspector Bradley knew that cologne is often used in an attempt to throw off narcotics dogs. *Id.* Finally, Inspector Bradley also discovered that both Kennedy and Porter had prior convictions for drug offenses.[2]

### B. Procedural Background

The United States filed the Complaint for Forfeiture on March 6, 2008. Kennedy and Porter were served with a copy of the Complaint and a Warrant of Arrest of Property *In Rem* by certified mail sent on March 13, 2008. Notice of this action was also provided by publication in a newspaper of general circulation (*The Inter-City Express*) on May 30, June 6, and June 13 of 2008. Notice of forfeiture was also posted on an official government website (www.forfeiture.gov) for thirty consecutive days beginning on March 14, 2008. No claim or answer has been served or filed. The Clerk of the Court entered default on August 18, 2008. On September 8, 2008, Porter contacted the U.S. Attorney and asked to be allowed to attend telephonically a Case Management Conference

---

[2] Kennedy was convicted for a violation of California Health and Safety Code § 11357(A) (possession of concentrated cannabis) in 2003. Porter was convicted for a violation of California Health and Safety Code § 11360(A) (sell or furnish marijuana/hash) in 2000.

3

scheduled for September 12, 2008. The United States did not object to Porter's participation. Although default had been entered and no claim had been filed, the Court granted Porter's request to appear.

At the September 12 Case Management Conference, the Court noted that default had already been entered. However, the Court granted Porter time to seek counsel, and to have his counsel move to set aside the default. The Court continued the Case Management Conference until November 14, 2008, and warned that if no motion was filed by that date that the Court would enter a default judgment.

Porter did not file a claim, answer, or motion to set aside the default, nor did he appear at the November 14 Case Management Conference. The United States filed this Motion for Default Judgment on January 27, 2009.

## III. ANALYSIS

### A. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. § 1345 and 1355(a), which vests district courts with original jurisdiction in "any action or proceeding for the . . . enforcement of any . . . forfeiture . . . incurred under any Act of Congress." 28 U.S.C. § 1355(a).

### B. Legal Standard

Forfeiture is "harsh and oppressive" and, thus, is "not favored by the courts." *U.S. v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994). The Ninth Circuit is "particularly wary of civil forfeiture statutes" because they "impose 'quasi-criminal' penalties" but do not provide property owners with the degree of procedural protection provided to criminal defendants. *Id.* at 1068; *U.S. v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (quoting *$191,910.00 in U.S. Currency*, 16 F.3d at 1068.). Accordingly, strict adherence to procedural rules is paramount in civil forfeiture proceedings. *See Marolf*, 173 F.3d at 1217 (denying forfeiture where government "erred" by failing to provide due notice to property owner); *$191,910.00 in U.S. Currency*, 16 F.3d at 1068-69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 615 against government and holding that "the burden on the government to adhere to procedural rules should be heavier than on claimants"). The procedures governing civil forfeiture actions are set forth in the various specific

forfeiture statutes, the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") and this district's Admiralty Local Rules.

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a district court may enter default judgment where the clerk, under Rule 55(a), has previously entered the defendant's default based upon a failure to plead or otherwise defend an action. Fed. R. Civ. P. 55; *see PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Entry of default against a defendant, however, does not automatically entitle a plaintiff to default judgment. *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986) (affirming the district court's denial of default judgment despite the defendant's alleged failure to answer the complaint). Rather, the decision to grant a motion for default judgment is within the court's discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon entry of default, the factual allegations of the plaintiff's complaint are assumed to be true, except those relating to damages. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). *See also* Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.").

In the present matter, default was entered as to the Defendant currency on August 18, 2008. Consequently, the factual allegations of Plaintiff's complaint are deemed to be true and the Court is vested with the authority to enter default judgment. The Court's decision whether to exercise its discretion to do so is guided by two overlapping inquiries. First, the Court considers Plaintiff's claims in light of the factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Second, the Court determines whether Plaintiff has met the specific procedural requirements governing forfeiture actions.

### C. Application of the *Eitel* Factors

In *Eitel*, the Ninth Circuit set forth the following factors to be considered in determining whether entry of default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

5

> excusable neglect, and (7) the strong policy underlying the Federal
> Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471-72 (9th Cir. 1986). In the present matter, there is no evidence that default was due to excusable neglect given that, as discussed below, Plaintiff provided adequate service and notice to the parties known to have an interest in the property. The Court also is aware of no evidence on the merits that suggests that entry of default judgment is inappropriate. Nor is the sum of money at stake in the action so large as to warrant a denial of the motion. Further, although the federal courts prefer to decide cases on their merits when "reasonably possible," *id*. at 1472, this preference is not dispositive. *See Kloepping v. Fireman's Fund*, 1996 WL 75314, *3 (N.D. Cal. February 13, 1996). When a defendant fails to answer a plaintiff's complaint, a decision on the merits is "impractical, if not impossible." *PepsiCo.*, 238 F. Supp. 2d at 1177. Therefore, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Kloepping*, 1996 WL 75314 at *3.

Before entering default judgment, however, the Court must ensure that the allegations of Plaintiff's complaint, which are assumed to be true, are sufficient to warrant forfeiture of the Defendant property under the relevant statutes. The Court addresses the sufficiency of Plaintiff's claim below.

### 1. Plaintiff's § 881 Claim

Plaintiff seeks forfeiture of currency pursuant to 21 U.S.C. § 881(a)(6). 21 U.S.C. § 881(a)(6) provides for forfeiture to the United States of "all moneys. . . furnished or intended to be furnished by any person in exchange for a controlled substance, . . . all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any" narcotics transaction. 21 U.S.C. § 881(a)(6).

Property subject to forfeiture under 21 U.S.C. § 881(a) may be seized by the Postal Service without a warrant if there is probable cause to believe that the property is subject to forfeiture and the seizure is made pursuant to a lawful search. 18 U.S.C. § 981(b)(1), (2). The statute of limitations governing forfeitures under § 881 is drawn from the customs laws. *See* 21 U.S.C. § 881(d). The applicable statute of limitations provides as follows:

> no suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, which ever was later.

19 U.S.C. § 1621; *see also U.S. v. James Daniel Good Real Prop.*, 114 U.S. 43, 63 (1993) (holding that 19 U.S.C. § 1621 provides the applicable statute of limitations for a § 881(a) claim).

In the present matter, the Complaint alleges that the Defendant property was seized based on Inspector Bradley's belief that the money was furnished or intended to be furnished in exchange for a controlled substance, or was traceable to such an exchange. Complaint ¶ 24; *see* 21 U.S.C. § 881(a)(6). The Complaint alleges that the money was discovered after Kennedy, the intended recipient, gave written permission to search the Express Mail package.  Complaint ¶ 17; *see* 18 U.S.C. § 981(b)(1), (2).  Furthermore, Plaintiff brought the forfeiture action well within the statute of limitations for section 881 forfeitures: the property was seized in October 2007 and the forfeiture action was filed on March 6, 2008, less than one year later.  Accordingly, Plaintiff's forfeiture claim under 21 U.S.C. §§  881(a)(6) is sufficient.

### D.     **Procedural Requirements for Forfeiture**

Given the Court's finding that entry of default judgment is appropriate under *Eitel*, the Court must next determine whether Plaintiff has also satisfied the procedural requirements that govern civil forfeiture actions and entry of default judgment in such actions.  The Court concludes that it has.

#### 1.     **The Supplemental Rules**

The Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") govern judicial forfeitures of property. *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1315 (9th Cir. 1998).  Prior to the adoption of Supplemental Rule G, the rules governing *maritime* forfeiture actions, Supplemental Rules C and E, also governed civil forfeiture actions. *See U.S. v. $50,040 in U.S. Currency*, 2007 WL 1176631, at *2 (N.D. Cal. April 20, 2007).  On December 1, 2006, Supplemental Rule G was adopted to govern civil forfeiture actions *in rem*. *Id*. At the same time, Rules C and E were revised to take into account the enactment of Rule G.

Supplemental Rule G provides that, to the extent it does not address an issue, Supplemental Rules C and E, as revised, continue to apply. Supp. R. G(1).

Pursuant to the Supplemental Rules, the United States initiates forfeiture proceedings by filing a complaint. Supp. R. C(2); Supp. R. G(2). Under both Rules C(2) and G(2), the complaint must be verified and describe the property at issue with reasonable particularity. Rule G(2) also requires that the complaint include sufficient factual allegations to support a "reasonable belief" the United States will be able to meet its burden at trial. Supp. R. G(2)(f).

If the property is located in the United States, the Plaintiff must then publish notice of the forfeiture action either in a newspaper of general circulation in the district (Supp. R. C(4); Supp. R. G(4)(a)(iv)(A)) or by posting a notice on a government forfeiture website for thirty consecutive days. Supp. R. G(4)(a)(iv)(C). This notice must include the time for filing a claim. Supp. R. G(4)(b)(ii)(B).

In addition to published notice, the United States must also provide direct notice of the forfeiture action to potential claimants under Supplemental Rule G. The notice must be sent by a means that may be reasonably calculated to reach the defendant. Supp. R. G(4)(b)(iii)(A). "Notice to a person from whom the property was seized who is not incarcerated when notice is sent may be sent to the last address that person gave to the agency that seized the property." Supp. R. G(4)(b)(iii)(E).

**2.    The Local Admiralty Rules**

In addition to the Supplemental Rules discussed above, Plaintiff must also comply with the local rules governing forfeiture proceedings, in particular, Admiralty Local Rules 6-1 and 6-2.[3] Admiralty Local Rule 6-2 addresses entry of default judgment in *in rem* actions, providing that default judgment may be entered in an *in rem* action if:

(a)    Notice has been given as required by Admiralty Local Rule 6-1;

---

[3] The Admiralty and Maritime Local Rules "apply . . . to proceedings that are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure . . . [including] statutory . . . forfeiture proceedings analogous to maritime actions *in rem*." Admir. L.R. 1-2. Because the Admiralty Local Rules have not been revised to reflect the 2006 amendments to the Supplemental Rules, they do not refer to Rule G. To the extent there is any conflict between the Local Rules and the Federal Supplemental Rules, the latter take precedence.

8

(b) The time to answer has expired, and

(c) No one has filed a verified statement of right or interest in the property.

Admir. L.R. 6-2; *see also U.S. v. $7,250 United States Currency*, 2004 WL 1465716, 1 (N.D. Cal. March 31, 2004) (applying Admir. L.R. 6-2 to determine whether plaintiff was entitled to entry of default judgment in forfeiture action brought under 28 U.S.C. § 881(a)(6)); *U.S. v. 1999 Lexus GS400*, 2007 WL 1056791, 3 (N.D. Cal. April 6, 2007) (applying Admir. L.R. 6-2 to determine whether plaintiff was entitled to entry of default judgment in forfeiture action brought under 28 U.S.C. §§ 881(a)(6) & (11)).

Admiralty Local Rule 6-1(a) requires that the following notice be given in an *in rem* action:

(1) By publication as required in FRCivP Supp C(4);

(2) By service upon the master or other person having custody of the property; and

(3) By service under FRCivP 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property.

Admir. L.R. 6-1(a). As noted above, Supplemental Rule C(4) requires that notice be given in a newspaper of "general circulation in the district" and that the notice specify the time to file a claim against the property and to answer the complaint. Supp. R. C(4). Rule 5(b) of the Federal Rules of Civil Procedure sets forth the general rules for service of documents other than a summons that apply in federal actions.

Failure to meet the notice requirements of Rule 6-1 is grounds for setting a default aside. Admir. L.R. 6-1(c).

**3.     Adequacy of Complaint**

Plaintiff filed a verified complaint that describes the property subject to forfeiture, the specific forfeiture statute at issue and the facts supporting forfeiture. In addition, the Court has already determined that the United States' claim under section 881 is sufficient. The Court therefore concludes that Plaintiff has met the requirements set forth in the Supplemental Rules, discussed above, for complaints in civil forfeiture actions.

**4.     Adequacy of Notice**

9

1   Plaintiff has met the notice requirements set forth in Rule 6-1 and the Supplemental Rules.
First, on March 13, 2008, Plaintiff served copies of the following documents on potential claimants
Kennedy and Porter: 1) Complaint; 2) Notice of Forfeiture Action; 3) Warrant of Arrest of Property
*In Rem*; 4) Case Management Order; 5) US District Court Rules and Guidelines; 6) ADR Dispute
Resolution Procedures in the Northern District of California; 7) ECF Registration Information
Handout; and 8) Notice of Availability of Magistrate Judge to Exercise Jurisdiction. *See* Certificate
of Service, Docket # 5. These documents were served by certified mail, a means of service that is
expressly permitted under Rule 5(b)(2)(B) of the Federal Rules of Civil Procedure. *See also In re
Worldwide Web Sys., Inc*., 328 F.3d 1291, 1294 (11th Cir. 2003) (upholding default judgment where
defendant failed to respond to the complaint served to his last known business address via certified
mail). Notice was sent to Kennedy at three different addresses which were either provided by
Kennedy or discovered by the Postal Service. Certificate of Service, Docket # 5. Each of those
mailings was returned as "unclaimed" or "moved, left no address." Memorandum of Points and
Authorities in Support of the United States' Motion for Default Judgment ("MPA") at 2 fn 1. Porter
admitted receiving notice of the Case Management Conference and a copy of the Clerk's entry of
default, but denied receiving a copy of the Complaint, which was mailed to the same address. *Id.*
There are no other individuals known to have an interest in the Defendant property.

Second, Plaintiff published the Notice of Forfeiture Action in *The Inter-City Express*, a daily
newspaper of general circulation in the East Bay. *See* Proof of Publication, Docket # 12; *see also*
Government Code § 6000 *et seq.* (defining "newspaper of general circulation"). This notice
provided a detailed account of the action, including the required time to file a claim and an answer,
and ran on May 30, June 6, and June 13, 2008. Proof of Publication, Docket # 12. Notice was also
published on a government forfeiture website for thirty consecutive days. *See* Declaration of
Publication, Docket # 13.

### 5. Expiration of Time to Answer

Supplemental Rule G(5)(a)(ii)(A) is the applicable rule governing time for filing a claim.
The rule requires that a person who asserts an interest in or right against the property must file a
verified statement identifying the interest or right within the time stated in the direct notice sent to

the claimant under Rule G(4)(b). An answer or a Rule 12 motion must be filed within twenty days of filing the claim. Supp. R. G(5)(b). Here, the Complaint was served by certified mail on Kennedy and Porter on March 13, 2008 and publication was completed in June 2008. Each specified that a claim must be filed within 35 days of service of the complaint, or thirty days of publication, whichever is earlier. *See* Docket # 2. Additionally, at the September 12 Case Management Conference, where Porter was allowed additional time to obtain counsel and move to set aside the entry of default, the Court expressly stated that no motion would be accepted after November 14, 2008. No claim or other motion has been filed by any potential claimants in this case, and the time for a responsive filing has expired.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion. It is further recommended that Default judgment be entered for the United States against Defendant $72,000.00 in United States Currency, which is forfeited to the United States. Accordingly, all right, title and interest in said property is vested in the United States of America. It is further recommended that the United States Marshals Service dispose of the forfeited defendant property according to law.

IT IS SO ORDERED.

Dated: February 27, 2009

Joseph C. Spero
United States Magistrate Judge

11